## CARNEGIE DOCK AND FUEL COMPANY v. MIDLAND LUMBER AND COAL COMPANY.[1]

### April 15, 1921.

### No. 22,203.

**Sale — quantity of coal in car — finding that weighmaster's certificate was incorrect.**

1. The controversy is as to the quantity of coal contained in a certain car at the time it was delivered to the railroad company at Duluth for defendant. The certificate of the state weighmaster at Duluth showed it to contain 83,500 pounds. The evidence justified a finding that it contained only 52,750 pounds on arrival at destination. There was no evidence tending to show a loss in transit. *Held* that the evidence is sufficient to sustain the finding of the trial court that it contained only 52,750 pounds when delivered to the railroad company.

**State weights not conclusive.**

2. The state weights were not made final or conclusive by either the statute or the contract.

**Cause for variation in weights question of fact.**

3. Whether the discrepancy in weight arose from a loss in transit or from an error in weighing, and if from an error in weighing whether

[1]Reported in 182 N. W. 515.

such error occurred at the place of shipment or the place of delivery, were questions of fact for the trial court to determine.

**Evidence of quantity received competent evidence of quantity shipped.**

4. Proof of the quantity received was competent evidence tending to prove the quantity shipped in the absence of evidence tending to show a loss in transit.

Action in the municipal court of Minneapolis to recover $389.53, the price of a carload of coal. The facts are stated in the first paragraph of the opinion. The case was tried before Montgomery, J., who made findings and ordered judgment in favor of plaintiff for $212.87. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*George T. Simpson, John F. Dahl* and *Eugene C. Bibb,* for appellant. *Kingman, Cross, Morley & Cant,* for respondent.

TAYLOR, C.

Plaintiff sold defendant a quantity of anthracite coal to be delivered on board cars at Duluth and claims to have delivered 83,500 pounds. Defendant claims that plaintiff delivered only 52,750 pounds for which quantity it tendered payment. Plaintiff refused the tender and sued for the contract price for 83,500 pounds. The trial court found that only 52,750 pounds had been delivered and that plaintiff was entitled to recover payment for that quantity and no more. Plaintiff appealed from an order denying a new trial.

The coal was loaded into a box-car at the docks in Duluth. The car was weighed by the state weighers before being loaded, was again weighed by them after being loaded, and they issued the usual official certificate certifying that it contained 83,500 pounds of coal and was properly sealed. The car was delivered to the railroad company immediately after being weighed and was transported to Watertown, Minnesota. The evidence is ample to sustain a finding that it contained only 52,750 pounds of coal when it arrived at Watertown, and the court found as a fact that it contained only that quantity when delivered to the railroad company. In support of the findings defendant contends that as the car was sealed when delivered to the railroad company and was still sealed when it arrived at Watertown, and, as coal could not be taken from it without breaking these

seals, the shortage must have existed when the coal was delivered to the railroad company. Plaintiff contends that, as the car was found by the state weighers to contain 83,500 pounds, and as it was sealed when weighed and was delivered from the scales direct to the railroad company, the shortage, if any, must have resulted from something that happened afterward. The shipment was made in November, 1918, during the coal shortage, and plaintiff suggests that some one may have broken the seals, removed a part of the coal, and then, in some manner, have procured and placed on the car the seals which it bore when it arrived at Watertown, but makes no claim that there is any evidence tending to show that the car had been tampered with. A witness for plaintiff who took part in weighing the coal at Duluth testified to the effect that if the car, when being weighed, was not "clear" from the car in front and the car behind, the scale would show a much greater weight than that of the particular car, and, with this testimony as a basis, defendant would account for the discrepancy between the weight at Duluth and that at Watertown on the theory that either the switch engine or another car contributed to the weight recorded by the scale at Duluth.

Whether it was more probable that the difference between the quantity shown by the weighing at Duluth and the quantity shown by the weighing at Watertown resulted from a loss during transportation than from an error in weighing, was a question for the trial court; and if the court found that it resulted from an error in weighing, whether such error occurred at the place of shipment or at the place of delivery, was also a question for the trial court. The court was not bound to assume that a loss occurred in transit in the absence of any evidence to that effect, and proof of the quantity actually received at destination was competent evidence tending to prove the quantity actually shipped. Standard Oil Co. v. Van Etten, 107 U. S. 325, 1 Sup. Ct. 178, 27 L. ed. 319; Bissett v. Bryant Lumber Co. 156 N. C. 162, 72 S. E. 205, Ann. Cas. 1912D, 1352.

The coal was shipped under a written proposition made by plaintiff and accepted by defendant. On the back of plaintiff's proposition under the heading: "Terms and conditions of sale and shipment," a dozen or more provisions were printed. Among these was a provision that: "Settlement for shipments in carload lots will be accepted only  *  *  *

on basis of Minnesota State Weighing Department," and a provision that: "All claims for shortages and complaints or claims on account of quality, grade or weight must be made in writing * * * within two days after receipt of goods * * * otherwise no claim will be entertained." Plaintiff contends in effect that the first provision above quoted operated to make the weighmaster's certificate conclusive evidence that the car contained the quantity of coal stated therein. We are unable to sustain this contention. The contract does not expressly stipulate that the state weights shall be conclusive, and the provision as to claims for shortage and as to complaints or claims on account of weight indicates that the parties understood that they were not conclusively bound by such weights. Furthermore the statute, G. S. 1913, § 4463, makes the weighmaster's certificate only prima facie evidence, and the parties will not be deemed to have made them conclusive, unless their contract clearly so provides. A similar question in principle was before the court in Nelson v. Charles Betcher Lumber Co. 88 Minn. 517, 93 N. W. 661, which involved a controversy as to the quantity of logs actually delivered under a contract in which the parties had provided that the logs should be scaled by the surveyor general of logs or his deputy. The court said: "There is no stipulation in the contract in the case at bar that the scale made by the surveyor general should be final; nor was the agreement between them such as to warrant the inference that they intended to be conclusively bound thereby. That officer was not agreed upon as an arbitrator or umpire to determine a disputed question as to the quantity of logs, for there was no dispute between the parties upon that question, but was designated simply as the person to make proper measurement as the logs passed through and out of the St. Paul boom. We must assume, in the absence of some language indicating a contrary intention, that in agreeing upon him as the person to make the measurements the parties had in mind the duties of that officer, and the effect given by the statutes to his performance thereof; and the court would not be warranted in giving greater effect to the scale or survey made by him than is given by the statutes defining such duties. * * * If the parties intended to give greater effect to the scale made by this officer, it should have been expressly so stipulated in their contract, or the intention to do so should fairly appear from the terms of their agreement. If we are right in this view, it

follows that the scale made by the surveyor general was subject to correction for mistake, and it was unnecessary to show fraud or inaccuracy amounting to bad faith. His scale was prima facie evidence only of its correctness."

The same rule was applied in Fortier v. Skibo Timber Co. 111 Minn. 518, 127 N. W. 414, in which it was said: "The provision in the contract for the taking of the measurements by a man deputized by the surveyor general of logs did not bind the parties to accept his measurements as final and conclusive. Nelson v. Charles Betcher Lumber Co. 88 Minn. 517, 93 N. W. 661. The correct scale was, therefore, a question for the jury under the evidence, without reference to fraud or bad faith by either party." This rule was again approved in Owen v. J. Neils Lumber Co. 125 Minn. 15, 145 N. W. 402.

In the present case neither the statute nor the contract made the state weights final or conclusive, and they were simply prima facie evidence of the quantity in the car. Being only prima facie evidence defendant had the right to dispute them and to show by the best evidence available the quantity of coal actually shipped. The evidence presented was sufficient to justify the court in finding that the car contained only 52,750 pounds when it arrived at Watertown, and, as the court was not bound to assume from the discrepancy in weights that a loss occurred in transit, in the absence of evidence to that effect, it could legitimately infer that the car contained only that quantity when delivered to the railroad company at Duluth.

The point that written notice of the shortage was not given within two days after arrival of the coal must be deemed to have been waived. Plaintiff did not assign that fact as a reason for refusing to allow the claim, and did not raise any such question in its motion for a new trial nor by its assignments of error in this court.

Plaintiff assigns as error the rulings of the court admitting evidence to show the quantity of coal in the car on its arrival at Watertown. As already stated this evidence was admissible and consequently the rulings were correct.

Order affirmed.